1

2

3

4

5

6

7               **IN THE UNITED STATES DISTRICT COURT**

8             **FOR THE EASTERN DISTRICT OF CALIFORNIA**

9

10   ERNEST L. HALES,                          CASE NO. CV F 10-0097 LJO SMS

11               Plaintiff,                    **ORDER ON DEFENDANTS'**
                                               **F.R.Civ.P. 12 MOTION TO DISMISS**
12        vs.                                  (Docs. 5, 17.)

13   MATTHEW CATE, et al,

14               Defendants.
     _____/

15

16                              **INTRODUCTION**

17        Defendants California Department of Corrections and Rehabilitation ("CDCR") officials and

18   employees seek to dismiss as legally barred and incognizable former inmate and pro se plaintiff Ernest

19   L. Hales' ("Mr. Hales") due process and equal protection claims arising from denial of Mr. Hales' visit

20   of an inmate at California State Prison – Corcoran ("Corcoran"). Mr. Hales responds that his operative

21   Complaint for Declaratory Relief and Injunctive Relief, and Monetary Damages (42 U.S.C. § 1983)

22   ("complaint") adequately pleads due process and equal protection claims arising from defendants'

23   misapplication of prison regulations. This Court considered defendants' F.R.Civ.P. 12(b)(6) motion to

24   dismiss on the record[1] and VACATES the May 24, 2010 hearing, pursuant to Local Rule 230(g). For

25   the reasons discussed below, this Court DISMISSES this action against defendants.

26   _____

27        [1]        Mr. Hales filed timely opposition to the initial motion to dismiss filed by one of the five defendants. Mr.
     Hales did not file timely opposition to the second motion to dismiss filed by the remaining defendants. Since the two motions
28   to dismiss raise nearly identical points, this Court applies Mr. Hales' timely opposition to all defendants.

                                            1

# BACKGROUND[2]

## Summary

Mr. Hales is a former CDCR inmate and registered sex offender.  Mr. Hales was paroled in 1996 and discharged from parole in 1999.  Mr. Hales holds himself out as an "independent paralegal" in association with Visalia attorney Marianne Gilbert ("Attorney Gilbert").

Defendants are:

1.      CDCR Secretary Matthew Cate ("Secretary Cate");

2.      Corcoran Warden Derral Adams ("Warden Adams");

3.      Corcoran Chief Deputy Warden – Administration R. Lopez ("Chief Deputy Warden Lopez");

4.      CDCR Correction Counselor II D. Lee ("Counselor Lee"); and

5.      Warden Adams' assistant Sabrina Johnson ("Ms. Johnson").[3]

The complaint arises out of "refusal of defendants to allow plaintiff to visit and conduct business with an inmate under defendants' custody and control at Corcoran."

## Denial Of Request To Visit Inmate

On January 3, 2009, Mr. Hales submitted a written request to Warden Adams to visit Corcoran inmate John Martinez ("inmate Martinez") as "an attorney representative" in association with Attorney Gilbert.  In September 2007, Mr. Hales had been approved to visit another Corcoran inmate as an attorney representative.  On January 8, 2009, Ms. Johnson informed Mr. Hales by telephone that his "request had been denied by 'someone in administration' at the institution" and "made some factually incorrect statements regarding [Mr. Hales'] previous criminal record."  Chief Deputy Warden Lopez' January 8, 2009 letter denied Mr. Hales' request based on "documented history and utilizing the California Law Enforcement Telecommunications System (i.e., warrants, convictions, etc.) and being a registered sex offender."

Mr. Hales submitted February 1, 2009 letter addressed to the CDCR director and Warden Adams

---

[2]      The factual recitation is derived generally from Mr. Hales's complaint, the target of defendants' challenges.

[3]      Secretary Cate, Warden Adams, Chief Deputy Warden Lopez, Counselor Lee and Ms. Johnson will be referred to collectively as the "CDCR defendants."

1  to appeal the denial.  Counselor Lee's April 30, 2009 letter upheld the denial given "[t]here was a clear

2  objection to you gaining entrance into a correctional facility due safety and security concerns."

3        Mr. Hales followed up with a claim to the California Victim Compensation and Government

4  Claims Board, which denied Mr. Hales' claim.

5                              **Mr. Hales' Claims**

6        The complaint alleges against each CDCR defendant nearly identical Fourteenth Amendment

7  claims, pursuant to 42 U.S.C. § 1983 ("section 1983"), that each CDCR defendant violated Mr. Hales'

8  due process and equal protection rights by:

9        1.    "[D]enying plaintiff the right to visit and conduct business with an inmate" to preclude

10              "plaintiff from earning a living as a paralegal"; and

11        2.    "[F]ailure to adequately supervise and train" subordinate correctional staff and wardens.

12        The complaint accuses each CDCR defendant of creating "a longstanding practice and custom

13  of denying former inmates the right to visit current inmates as an attorney representative."  The

14  complaint alleges that Secretary Cate, Warden Adams, Chief Deputy Warden Lopez and Counselor Lee

15  have ratified "this longstanding practice and custom" because they have "final policymaking authority"

16  either within CDCR or at Corcoran.  The complaint attributes to Ms. Johnson the creation or allowing

17  "a longstanding practice and custom of denying former inmates the right to visit current inmates as an

18  attorney representative."

19        The complaint seeks to recover for Mr. Hales' "financial, emotional, mental and other injuries"

20  as well as punitive damages.  The complaint seeks declaratory relief that the CDCR defendants' action

21  constitute a violating "underground regulation."  The complaint seeks an injunction to prohibit "denying

22  plaintiff permission to visit any inmate at any CDCR facility in plaintiff's capacity as an attorney

23  representative and/or an inmate visitor, **absent articulation of specific evidence and proof** that such

24  a visit would constitute a **legitimate** safety and security concern."  (Bold in original.)

25                              **DISCUSSION**

26                      **F.R.Civ.P. 12(b)(6) Motion Standards**

27        The CDCR defendants seek F.R.Civ.P. 12(b)(6) dismissal in that Mr. Hales' "constitutional

28  rights were not violated" given that "California law prohibits former prisoners from entering prison

3

1  property without the specific consent of the warden." The CDCR defendants also fault the complaint's

2  failure to allege that they "personally participated" in the decision to deny Mr. Hales's visitation with

3  inmate Martinez.

4        Mr. Hales responds that despite inmate Martinez' "security risk, he is entitled to direct, personal

5  visit with counsel and counsel's representatives." Mr. Hales contends that the CDCR defendants are

6  "responsible under the facts and the law for denying Plaintiff permission to visit Mr. Martinez."

7        A F.R.Civ.P. 12(b)(6) motion to dismiss is a challenge to the sufficiency of the pleadings set

8  forth in the complaint. "When a federal court reviews the sufficiency of a complaint, before the reception

9  of any evidence either by affidavit or admissions, its task is necessarily a limited one.  The issue is not

10  whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to

11  support the claims." *Scheurer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683 (1974); *Gilligan v. Jamco*

12  *Development Corp.*, 108 F.3d 246, 249 (9th Cir. 1997).  A F.R.Civ.P. 12(b)(6) dismissal is proper where

13  there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a

14  cognizable legal theory." *Balisteri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990); *Graehling*

15  *v. Village of Lombard, Ill.*, 58 F.3d 295, 297 (7th Cir. 1995).

16        In resolving a F.R.Civ.P. 12(b)(6) motion, a court must:  (1) construe the complaint in the light

17  most favorable to the plaintiff; (2) accept all well-pleaded factual allegations as true; and (3) determine

18  whether plaintiff can prove any set of facts to support a claim that would merit relief.  *Cahill v. Liberty*

19  *Mut. Ins. Co.,* 80 F.3d 336, 337-338 (9th Cir. 1996).  Nonetheless, a court is not required "to accept as

20  true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences."

21  *In re Gilead Sciences Securities Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (citation omitted). A court

22  need not permit an attempt to amend if "it is clear that the complaint could not be saved by an

23  amendment."  *Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*, 416 F.3d 940, 946 (9th Cir. 2005).

24        "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual

25  allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more

26  than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."

27  *Bell Atl. Corp. v. Twombly*, 550 U.S. 554,127 S. Ct. 1955, 1964-65 (2007) (internal citations omitted).

28  Moreover, a court "will dismiss any claim that, even when construed in the light most favorable to

1  plaintiff, fails to plead sufficiently all required elements of a cause of action." *Student Loan Marketing*

2  *Ass'n v. Hanes*, 181 F.R.D. 629, 634 (S.D. Cal. 1998).  In practice, "a complaint . . . must contain either

3  direct or inferential allegations respecting all the material elements necessary to sustain recovery under

4  some viable legal theory." *Twombly*, 550 U.S. at 562, 127 S.Ct. at 1969 (quoting *Car Carriers, Inc. v.*

5  *Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984)).

6          In *Ashcroft v. Iqbal*, __ U.S. __, 129 S.Ct. 1937,1949 (2009), the U.S. Supreme Court recently

7  explained:

8          To survive a motion to dismiss, a complaint must contain sufficient factual
   matter, accepted as true, to "state a claim to relief that is plausible on its face." . . . A
9  claim has facial plausibility when the plaintiff pleads factual content that allows the court
   to draw the reasonable inference that the defendant is liable for the misconduct alleged.
10 . . . The plausibility standard is not akin to a "probability requirement," but it asks for
   more than a sheer possibility that a defendant has acted unlawfully. (Citations omitted.)

11

12         After discussing *Iqbal*, the Ninth Circuit Court of Appeals summarized: "In sum, for a complaint

13 to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that

14 content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret*

15 *Service*, 572 F.3d 962, 989 (9th Cir. 2009) (quoting *Iqbal*, __ U.S. __, 129 S.Ct. at 1949).

16         The U.S. Supreme Court applies a "two-prong approach" to address a motion to dismiss:

17         First, the tenet that a court must accept as true all of the allegations contained in
   a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of
18 a cause of action, supported by mere conclusory statements, do not suffice. . . .  Second,
   only a complaint that states a plausible claim for relief survives a motion to dismiss. . .
19 . Determining whether a complaint states a plausible claim for relief will . . . be a
   context-specific task that requires the reviewing court to draw on its judicial experience
20 and common sense. . . . But where the well-pleaded facts do not permit the court to infer
   more than the mere possibility of misconduct, the complaint has alleged – but it has not
21 "show[n]"-"that the pleader is entitled to relief." Fed. Rule Civ. Proc. 8(a)(2).

22         In keeping with these principles a court considering a motion to dismiss can
   choose to begin by identifying pleadings that, because they are no more than conclusions,
23 are not entitled to the assumption of truth. While legal conclusions can provide the
   framework of a complaint, they must be supported by factual allegations. When there are
24 well-pleaded factual allegations, a court should assume their veracity and then determine
   whether they plausibly give rise to an entitlement to relief.

25

26 *Iqbal*, __ U.S. __, 129 S.Ct. at 1949-1950.

27         With these standards in mind, this Court turns to the CDCR defendants' challenges to the claims

28 against them.

5

1

**Section 1983 Requirements**

2        "Section 1983 imposes two essential proof requirements upon a claimant:  (1) that a person

3   acting under color of state law committed the conduct at issue, and (2) that the conduct deprived the

4   claimant of some right, privilege, or immunity protected by the Constitution or laws of the United

5   States." *Leer v. Murphy*, 844 F.2d 628, 632-633 (9th Cir. 1988).

6        "Section 1983 'is not itself a source of substantive rights,' but merely provides 'a method for

7   vindicating federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271, 114 S.Ct. 807,

8   811 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144, n. 3, 99 S.Ct. 2689, 2694, n. 3 (1979)).

9   Section 1983 and other federal civil rights statutes address liability "in favor of persons who are deprived

10  of 'rights, privileges, or immunities secured' to them by the Constitution." *Carey v. Piphus*, 435 U.S.

11  247, 253, 98 S.Ct. 1042 (1978) (quoting *Imbler v. Pachtman*, 424 U.S. 409, 417, 96 S.Ct. 984, 996

12  (1976)).  "The first inquiry in any § 1983 suit, therefore, is whether the plaintiff has been deprived of

13  a right 'secured by the Constitution and laws.'"  *Baker,* 443 U.S. at 140, 99 S.Ct. 2689.  Stated

14  differently, the first step in a section 1983 claim is to identify the specific constitutional right allegedly

15  infringed.  *Albright*, 510 U.S. at 271, 114 S.Ct. at 811.  "Section 1983 imposes liability for violations

16  of rights protected by the Constitution, not for violations of duties of care arising out of tort law." *Baker*,

17  443 U.S. at 146, 99 S.Ct. 2689.

18       With the section 1983 requirements in mind, this Court next will address due process and equal

19  protection rights.

20

**Due Process**

21       The CDCR defendants attack the due process claims in the absence of a property or liberty

22  interest subject to due process.

23       "The Fourteenth Amendment protects individuals against the deprivation of liberty or property

24  by the government without due process." *Portman v. County of Santa Clara*, 995 F.2d 898, 904 (9th Cir.

25  1993).  "The requirements of procedural due process apply only to the deprivation of interests

26  encompassed by the Fourteenth Amendment's protection of liberty and property." *Board of Regents of*

27  *State Colleges v. Roth*, 408 U.S. 564, 569, 92 S.Ct. 2701 (1972).  A Fourteenth Amendment due process

28  claim under section 1983 may address "procedural rights" of "guarantee of a fair procedure" to address

6

1   deprivation of a "life, liberty or property" interest "*without due process of law.*" *Zinermon v. Burch*, 494

2   U.S. 113, 125, 110 S.Ct. 975 (1990). To state a section 1983 claim based on procedural due process, a

3   plaintiff must allege: (1) a liberty or property interest protected by the Constitution; (2) a deprivation of

4   the interest by the government; and (3) lack of process.  *Wright v. Riverland*, 219 F.3d 905, 913 (9th Cir.

5   2000).

6          Once it is determined that the Due Process Clause applies, "the question remains what process

7   is due." *Morrissey v. Brewer*, 408 U.S. 471, 481, 92 S.Ct. 2593, 2600 (1972).  An essential principle of

8   due process is that a deprivation of life, liberty, or property "be preceded by notice and opportunity for

9   hearing appropriate to the nature of the case." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S.

10  306, 313, 70 S.Ct. 652, 656, 94 L.Ed. 865 (1950).  "The fundamental requirement of due process is the

11  opportunity to be heard at a meaningful time and in a meaningful manner." *Mathews v. Eldridge*, 424

12  U.S. 319, 333, 96 S.Ct. 893 (1976).

13         "To withstand Fourteenth Amendment scrutiny, a statute is required to bear only a rational

14  relationship to a legitimate state interest, unless it makes a suspect classification or implicates a

15  fundamental right." *Nat'l Assoc. for the Advancement of Psychoanalysis v. Cal. Bd. of Psychology*, 228

16  F.3d 1043, 1049 (9th Cir. 2000).  "In applying the rational basis test, we presume the constitutionality

17  of the classification." *Nat'l Assoc. for the Advancement of Psychoanalysis*, 228 F.3d at 1050.

18         The United States Supreme Court has explained that prison officials' judgment is entitled to

19  deference:

20             Prison officials must be free to take appropriate action to ensure the safety of
21         inmates and corrections personnel and to prevent escape or unauthorized entry.
           Accordingly, we have held that even when an institutional restriction infringes a specific
22         constitutional guarantee, such as the First Amendment, the practice must be evaluated
           in the light of the central objective of prison administration, safeguarding institutional
23         security.

24  *Bell v. Wolfish*, 441 U.S. 520, 547, 99 S.Ct. 1861 (1979); *see Overton v. Bazzetta*, 539 U.S. 126, 133,

25  123 S.Ct. 2162 (2003) (prison "regulation prohibiting visitation by former inmates bears a self-evident

26  connection to the State's interest in maintaining prison security and preventing future crimes").

27         Moreover, states are authorized to regulate businesses and professions: "General statutes within

28  the state power are passed that affect the person or property of individuals, sometimes to the point of

7

1    ruin, without giving them a chance to be heard. Their rights are protected in the only way that they can

2    be in a complex society, by their power, immediate or remote, over those who make the rule."

3    *Bi-Metallic Investment Co. v. Colorado*, 239 U.S. 441, 445, 36 S.Ct. 141, 142, 60 L.Ed. 372 (1915).

4         The CDCR defendants argue that the complaint fails to allege a due process claim.  The CDCR

5    defendants point to California Penal Code section 4571 which renders as a felony a convicted felon's

6    entry onto prison property without warden permission.  The CDCR defendants note that prison

7    restrictions "grounded upon policy considerations of institutional security and internal order" have been

8    upheld.  *See Department of Corrections v. Superior Court*, 131 Cal.App.3d 245, 253, 182 Cal.Rptr. 294

9    (1982); *see also Morris v. Superior Court*, 145 Cal.App.3d 561, 567, 193 Cal.Rptr. 496 (1983) ("great

10   weight and respect is due the Department's [CDCR's] administrative expertise in judging the security

11   risks involved" with paralegal visits).

12        The CDCR defendants argue denial of Mr. Hales' visitation of inmate Martinez "was not

13   arbitrary considering the security risks that Mr. Martinez presents to Corcoran" given inmate Martinez'

14   gang affiliation.  The CDCR defendants continue that Mr. Hales' permitted entry into another prison "as

15   part of a prison ministries program" or approval "for attorney representative visits" with another inmate

16   "does not render the denial of confidential visits with inmate Martinez arbitrary and unreasonable."  The

17   CDCR defendants further argue that denial to enter Corcoran to visit inmate Martinez "does not trigger

18   any due process liberty interest" given that Mr. Hales lacked a "lawful right to enter prison property" and

19   would commit a felony if he entered Corcoran without warden permission.

20        Mr. Hales "does not dispute the validity or applicability of Pen.C. § 4571 to his circumstances."

21   Mr. Hales relies on a CDCR regulation which permits an "institution head" to "deny visiting by a former

22   prison inmate for reasons that would apply to any other person" if the former inmate has been discharged

23   for more than a year from an institution or from parole.  *See* 15 CCR § 3172.1(b)(4).  Mr. Hales claims

24   that the CDCR defendants applied a standard beyond "any other person" to preclude Mr. Hales from

25   "engaging in his common occupation of life."  Mr. Hales relies on the following from *Roth*, 408 U.S.

26   564, 577, 92 S.Ct. 2701: " Property interests, of course, are not created by the Constitution. Rather they

27   are created and their dimensions are defined by existing rules or understandings that stem from an

28   independent source such as state law – rules or understandings that secure certain benefits and that

8

1    support claims of entitlement to those benefits."  Mr. Hales concludes that he "was treated as a former

2    inmate, and disapproved solely on that basis, which is prohibited by the codified regulation."

3         The complaint identifies no liberty or property interest subject to due process protection.  As a

4    convicted felon, Mr. Hales has no right to enter Corcoran – end of story.  California Penal Code section

5    4571 does not purport to limit a warden's discretion to deny felon access.  Mr. Hales appealed his denial

6    through the prison process, which sustained denial of his entry of Corcoran.  Denial of prison entry by

7    convicted felons serves vital penal and security interests.

8         Moreover, denial of Corcoran entry does not deprive Mr. Hales of his livelihood.  He is free to

9    pursue is paralegal vocation in other avenues.  A plaintiff's "liberty interest is implicated only when the

10   state makes a charge against him that might seriously damage his standing and associations in his

11   community." *Stretten v. Wadsworth Veterans Hosp.*, 537 F.2d 361, 365 (9th Cir.1976).  Due process

12   protections apply if "there is some public disclosure of the charge," but "[w]ithout a disclosure that is

13   public, there is no violation of due process as 'the reasons stated to him in private [would have] no

14   different impact on his reputation than if they had been true.'"  *Llamas v. Butte Community College

15   Dist.,* 238 F.3d 1123, 1129 (9th Cir. 2001) (quoting *Bishop v. Wood*, 426 U.S. 341, 349, 96 S.Ct.

16   2074(1976)).  The complaint alleges no public disclosure of Mr. Hales' denial of Corcoran entry and

17   reflects that the matter was private to demonstrate no serious damage in Mr. Hales's standing or

18   association to implicate a liberty interest.

19        The CDCR defendants correctly note the absence of facts to support a policy to prohibit felons

20   from visiting Corcoran inmates.  The complaint's allegation that Mr. Hales had a confidential visit with

21   another inmate contradicts such purported policy.  The CDCR defendants are correct that the complaint

22   lacks facts that the decision to deny visitation with inmate Martinez "was anything other than a singular

23   decision, related solely to inmate Martinez."

24        The due process claims fail and cannot be resurrected by an attempt to amend.

25                                   **Equal Protection**

26        The CDCR defendants contend that the complaint's allegations fail to invoke equal protection

27   to doom the equal protection claims against the CDCR defendants.

28        "The Equal Protection Clause of the Fourteenth Amendment commands that no state shall 'deny

1   to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that

2   all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Center, Inc.*,

3   473 U.S. 432, 439, 105 S.Ct. 3249 (1985). The "purpose of the equal protection clause of the Fourteenth

4   Amendment is to secure every person within the State's jurisdiction against intentional and arbitrary

5   discrimination, whether occasioned by express terms of a statute or by its improper execution through

6   duly constituted agents." *Sioux City Bridge Co. v. Dakota County*, 260 U.S. 441, 445, 43 S.Ct. 190

7   (1923).

8          A section 1983 plaintiff alleging an equal protection violation must prove that: (1) the defendants

9   treated plaintiff differently from others similarly situated; (2) the unequal treatment was based on an

10  impermissible classification; (3) the defendants acted with discriminatory intent in applying this

11  classification; and (4) plaintiff suffered injury as a result of the discriminatory classification. *Moua v.*

12  *City of Chico*, 324 F.Supp.2d 1132, 1137 (E.D. Cal. 2004); *see Barren v. Harrington*, 152 F.3d 1193,

13  1194 (9th Cir. 1998) (a section 1983 plaintiff alleging denial of equal protection "must show that the

14  defendants acted with an intent or purpose to discriminate against plaintiff based on membership in a

15  protected class."); *Van Pool v. City and County of San Francisco*, 752 F.Supp. 915, 927 (N.D. Cal.1990)

16  (section 1983 plaintiff must prove purposeful discrimination by demonstrating that he "receiv[ed]

17  different treatment from that received by others similarly situated," and that the treatment complained

18  of was under color of state law).

19          "For statutory challenges made on Equal Protection grounds, '[t]he general rule is that legislation

20  is presumed to be valid and will be sustained if the classification drawn by the statute is rationally related

21  to a legitimate [government] interest.'" *U.S. v. Harding*, 971 F.2d 410, 412 (9th Cir. 1992) (quoting

22  *Cleburne*, 473 U.S. at 440, 105 S.Ct. 3249, 3254 (citations omitted)). "When social or economic

23  legislation is at issue, the Equal Protection Clause allows the States wide latitude . . ." *Cleburne*, 473

24  U.S. at 440, 105 S.Ct. 3249, 3254. "For statutory classifications 'that disadvantage a 'suspect class,' or

25  that impinge upon the exercise of a 'fundamental right,' the Supreme Court requires a showing of a

26  compelling governmental interest." *Harding*, 971 F.2d at 412 (quoting *Plyler v. Doe*, 457 U.S. 202,

27  216-217, 102 S.Ct. 2382, 2394-95 (1982)). "A law is subject to strict scrutiny if it targets a suspect class

28  or burdens the exercise of a fundamental right." *U.S. v. Hancock*, 231 F.3d 557, 565 (9th Cir. 2000), *cert.*

1  *denied*, 532 U.S. 989, 121 S.Ct. 1641 (2001).  "However, when no suspect class or fundamental right

2  is affected, the federal courts 'properly exercise[ ] only a limited review power over Congress, the

3  appropriate representative body through which the public makes democratic choices among alternative

4  solutions to social and economic problems.'" *Harding*, 971 F.2d at 412 (quoting *Schweiker v. Wilson*,

5  450 U.S. 221, 230, 101 S.Ct. 1074 (1981)).  A "'classification neither involving fundamental rights nor

6  proceeding along suspect lines is accorded a strong presumption of validity' and must be upheld 'if there

7  is a rational relationship between the disparity of treatment and some legitimate governmental purpose.'"

8  *Aleman v. Glickman*, 217 F.3d 1191, 1200 (9th Cir. 2000) (quoting *Heller v. Doe by Doe*, 509 U.S. 312,

9  319-320, 113 S.Ct. 2637 (1993)).

10     The CDCR defendants argue that Mr. Hales' former-inmate status "is not a suspect class."  The

11  CDCR defendants note that a prison "is not a public place and visitation can be restricted."  *See Overton*

12  *v. Bazzetta*, 539 U.S. 126, 123 S.Ct. 2162 (2003).  The CDCR defendants point to inmate Martinez'

13  Mexican Mafia prison gang affiliation as further support to deny Mr. Hales' visitation.

14     The CDCR defendants are correct that Mr. Hales' former-inmate status does not invoke equal

15  protection.  The complaint fails to allege that Mr. Hales was treated differently from others similarly

16  situated based on his status.  The complaint lacks facts that the CDCR defendants acted with intent or

17  purpose to discriminate against Mr. Hales based on his former-inmate status.  The complaint identifies

18  neither a suspect class nor a burden on exercise of a fundamental right to support an equal protection

19  claim.  No further facts appear to invigorate the claim which is subject to dismissal, and Mr. Hales offers

20  nothing to support an equal protection claim to warrant an attempt to amend.

21     **Direct Participation And Supervisory Liability**

22     The CDCR defendants fault the complaint's failure to allege that "they personally participated

23  in the decision to deny plaintiff confidential visitation with inmate Martinez."

24     Mr. Hales responds that his initial application to visit Corcoran was addressed to Warden Adams

25  as well as his appeal of denial to visit.  Mr. Hales argues that Warden Adams' delegation "to a

26  subordinate in the first instance" and failure "to reply to Plaintiff's appeal in the second instance, does

27  not relieve him of his duty under the law, nor his culpability in this matter."

28     "Section 1983 creates a cause of action based on personal liability and predicated upon fault;

11

1   thus, liability does not attach unless the individual defendant caused or participated in a constitutional

2   deprivation." *Vance v. Peters*, 97 F.3d 987, 991 (7th Cir. 1996), *cert. denied*, 520 U.S. 1230, 117 S.Ct.

3   1822 (1997); *see Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) ("Liability under section 1983 arises

4   only upon a showing of personal participation by the defendant.")  "The inquiry into causation must be

5   individualized and focus on the duties and responsibilities of each individual defendant whose acts or

6   omissions are alleged to have caused the constitutional deprivation." *Leer*, 844 F.2d at 633.  Section

7   1983 requires that there be an actual connection or link between the defendant's actions and the

8   deprivation allegedly suffered.  *See Monell v. Department of Social Services*, 436 U.S. 658, 98 S.Ct.

9   2018 (1978); *Rizzo v. Goode*, 423 U.S. 362, 96 S.Ct. 598 (1976).

10      A plaintiff cannot hold an officer liable "because of his membership in a group without a

11  showing of individual participation in the unlawful conduct." *Jones v. Williams*, 297 F.3d 930, 935 (9th

12  Cir. 2002) (citing *Chuman v. Wright*, 76 F.3d 292, 294 (9th Cir. 1996)).  A plaintiff must "establish the

13  'integral participation' of the officers in the alleged constitutional violation." *Jones*, 297 F.3d at 935.

14  "'[I]ntegral participation' does not require that each officer's actions themselves rise to the level of a

15  constitutional violation."  *Boyd v. Benton County*, 374 F.3d 773, 780 (9th Cir. 2004).   Integral

16  participation requires "some fundamental involvement in the conduct that allegedly caused the

17  violation."  *Blankenhorn v. City of Orange*, 485 F.3d 463, 481, n. 12 (9th Cir. 2007).  "A person

18  'subjects' another to the deprivation of a constitutional right, within the meaning of section 1983, if he

19  does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he

20  is legally required to do that causes the deprivation of which complaint is made." *Johnson v. Duffy*, 588

21  F.2d 740, 743 (9th Cir. 1978).

22      "A plaintiff must allege facts, not simply conclusions, that show that an individual was

23  personally involved in the deprivation of his civil rights." *Barren v. Harrington*, 152 F.3d 1193, 1194

24  (9th Cir. 1998).  A section 1983 plaintiff "must state the allegations generally so as to provide notice to

25  the defendants and alert the court as to what conduct violated clearly established law." *Preschooler II*

26  *v. Clark County School Bd. of Trustees*, 479 F.3d 1175, 1182 (9th Cir. 2007).

27      In addition, Congress did not intend to "impose liability vicariously on [employers or

28  supervisors] solely on the basis of the existence of an employer-employee relationship with a tortfeasor."

12

*Monell*, 436 U.S. at 692, 98 S.Ct. at 2036.  Generally, supervisory personnel are not liable under section 1983 for actions of their employees under a respondeat superior theory, and thus, when a named defendant holds a supervisory position, the causal link between him and the claimed constitutional violation must be specifically alleged and proved.  *See Jeffers v. Gomez*, 267 F.3d 895, 915 (9th Cir. 2001); *Fayle v. Stapley*, 607 F.2d 858, 862 (9th Cir. 1979); *Mosher v. Saalfeld*, 589 F.2d 438, 441 (9th Cir. 1978), *cert. denied*, 442 U.S. 941, 99 S.Ct. 2883 (1979).  To establish a prima facie case of supervisor liability, a plaintiff must show facts to indicate that the supervisor defendant either: (1) personally participated in the alleged deprivation of constitutional rights; (2) knew of the violations and failed to act to prevent them; or (3) promulgated or implemented a policy "so deficient that the policy itself 'is a repudiation of constitutional rights' and is 'the moving force of the constitutional violation.'" *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989); *Taylor*, 880 F.2d at 1045.  A supervising official is liable in his individual capacity if he "set[ ] in motion a series of acts by others, or knowingly refused to terminate a series of acts by others, which he kn[e]w or reasonably should [have] know[n], would cause others to inflict the constitutional injury." *Larez v. City of Los Angeles*, 946 F.2d 630, 646 (9th Cir. 1991) (ratification, poor investigation, or failure to terminate series of events may make supervisor liable).[4]

"Vague and conclusory allegations of official participation in civil rights violations are not sufficient to withstand a motion to dismiss." *Ivey v. Bd. of Regents of the Univ. of Alaska*, 673 F.2d 266, 268 (1982).

The U.S. Supreme Court has applied an "objective standard" to a claim of deliberate indifference for failure to train and supervise.  *See Farmer v. Brennan*, 551 U.S. 825, 841, 114 S.Ct. 1970 (1994).  "[I]t may happen that in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." *Canton*, 489 U.S. at 390, 109 S.Ct. 1197.

---

[4]      The Ninth Circuit Court of Appeals offered alternative elements to impose section 1983 liability on a supervisor: "'(1) his or her personal involvement in the constitutional deprivation, *or* (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation.'" *Jeffers*, 267 F.3d at 915 (quoting *Redman v. County of San Diego*, 942 F.2d 1435, 1446 (9th Cir. 1991)).

1       The CDCR defendants argue that allegations against Secretary Cate and Warden Adams rest

2   "solely" on their "supervisory responsibility" and that the complaint fails to allege facts that Secretary

3   Cate and Warden Adams personally participated in a decision to deny Mr. Hales visitation with inmate

4   Martinez.   The CDCR defendants contend that the complaint lacks facts that Chief Deputy Warden

5   Lopez "made an unconstitutional decision or that 'more or different' training or supervision by

6   [Secretary] Cate would have resulted in a different decision.   The CDCR defendants point to the lack

7   of allegations of Counselor Lee and Ms. Johnson's supervisory responsibilities in that they are named

8   as defendants "solely" because they communicated with Mr. Hales.

9       The complaint is devoid of allegations of the CDCR defendants' individual conduct to inflict a

10   constitutional injury on Mr. Hales.   As explained above, the complaint lacks a due process or equal

11   protection claim.   The complaint lacks facts to establish a causal link between any CDCR defendant and

12   a cognizable constitutional violation. Secretary Cate and Warden Adams' delegation of tasks is of no

13   consequence in absence of a viable claim.   The complaint fails to alert the CDCR defendants of conduct

14   which allegedly violated clearly established law.   The complaint rests on passing references of "failure

15   to adequately supervise and train correctional staff" and ratifying a "longstanding practice and custom

16   by CDCR employees under his direction and control."   Such vague, conclusory allegations fail to support

17   section 1983 liability of any CDCR defendant as a supervisor or direct participant.   In the absence of a

18   viable section 1983 claim, this action is subject to dismissal, and an attempt at amendment would not

19   resuscitate Mr. Hales' barred claims.

20   **Eleventh Amendment Bar**

21       The CDCR defendants contend that the Eleventh Amendment bars this Court's interference with

22   CDCR regulations to warrant dismissal of Mr. Hales' claims that the CDCR defendants "maintained a

23   practice and custom of denying former inmates visitation as an attorney representative."

24       A "federal suit against state officials on the basis of state law contravenes the Eleventh

25   Amendment when – as here – the relief sought and ordered has an impact directly on the State itself."

26   *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 117, 104 S.Ct. 900 (1984).   The Eleventh

27   Amendment "bars claims in federal court against state officials based on state law violations."   *Air*

28   *Transport Ass'n of America v. Public Utilities Com'n of State of Cal.*, 833 F.2d 200, 204 (9th Cir. 1987).

1  The U.S. Supreme Court further explained:

2       A federal court's grant of relief against state officials on the basis of state law, whether
        prospective or retroactive, does not vindicate the supreme authority of federal law. On
3       the contrary, it is difficult to think of a greater intrusion on state sovereignty than when
        a federal court instructs state officials on how to conform their conduct to state law. Such
4       a result conflicts directly with the principles of federalism that underlie the Eleventh
        Amendment.

5

6  *Halderman*, 465 U.S. at 106, 104 S.Ct. 90.

7       At their essence, Mr. Hales' claims address state law violations by CDCR officials and

8  employees.  Relief on Mr. Hales' claims necessarily would impact California through CDCR.  The

9  Eleventh Amendment bar further supports dismissal of Mr. Hales' claims.  Mr. Hales fails to

10 substantiate his claim of impossibility to sue state officials based on Eleventh Amendment application.

11                          **<u>CONCLUSION AND ORDER</u>**

12      For the reasons discussed above, this Court:

13      1.      DISMISSES with prejudice this action; and

14      2.      DIRECTS the clerk to enter judgment  against plaintiff Ernest L. Hales and in favor of

15              defendants Matthew Cate, Derral Adams, R. Lopez, D. Lee and Sabrina Johnson and to

16              close this action.

17      IT IS SO ORDERED.

18 **Dated:    May 13, 2010**                    /s/ Lawrence J. O'Neill
                                     UNITED STATES DISTRICT JUDGE
19

20

21

22

23

24

25

26

27

28

                                   15